**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| In re: | Case No. 26-10364 |
| JUMPSTART COMMUNICATIONS LLC | Chapter 7 |
| Debtor. | |

### APPLICATION TO EMPLOY SINGH LAW FIRM, P.A. AS COUNSEL TO THE DEBTOR-IN POSSESSION EFFECTIVE RETROACTIVELY AS OF THE PETITION DATE THROUGH THE CONVERSION DATE

Jumpstart Communications LLC (the "Debtor"), solely with respect to services rendered while it was a debtor-in-possession during the Chapter 11 phase of this case, for its Application to Employ Singh Law Firm, P.A. as Counsel to the Debtor-in-Possession Effective Retroactively as of the Petition Date Through the Conversion Date (the "Application"), states as follows:

### Jurisdiction, Venue, and Statutory Basis

1. This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334.

2. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory and legal predicates for the relief requested herein are §§ 105(a), 327(a), 329, and 330 of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule B-2014-1 of the Local Rules of the United States Bankruptcy Court for the Northern District of Indiana (the "Local Rules").

**Factual Background**

5.      On March 31, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

6.      From the Petition Date until April 15, 2026, the Debtor continued to operate its business and manage its property as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

7.      On April 15, 2026 (the "Conversion Date"), the Debtor voluntarily converted this case from Chapter 11 to Chapter 7, and a Chapter 7 trustee was appointed.

8.      Between the Petition Date and the Conversion Date (the "Chapter 11 Period"), the Debtor required immediate and urgent legal advice and assistance in connection with the commencement and administration of the case, the Debtor's obligations as debtor-in-possession, communications with creditors and the Office of the United States Trustee, issues relating to cash collateral and ongoing operations, and matters necessary to preserve the Debtor's business operations and assets. At the time of the Petition Date, the Debtor had approximately sixty (60) employees, and its business spanned multiple states. At the outset, the Debtor appeared to be a viable Chapter 11 candidate given the Debtor's continued and significant accounts receivable, coupled with a strong inventory and workforce.

9.      Singh Law Firm, P.A. ("Singh Law Firm") began providing such legal services on or about the Petition Date and provided services throughout the entirety of the Chapter 11 Period. Due to the emergency nature of the filling as well as the Debtor's complex operational issues, Singh Law Firm provided continuous services to the Debtor to ensure that the Debtor fully understood the Chapter 11 bankruptcy process as well as to navigate the early stages of the

bankruptcy which included significant correspondence with Debtor, creditors, and Debtor's employees .

10.     Singh Law Firm did not receive any retainer from the Debtor prior to the Petition Date or thereafter. In short, no retainer was paid at any time.

11.     The relief sought herein is expressly limited to the Chapter 11 Period. Singh Law Firm does not seek approval for any post-conversion Chapter 7 services in this Application.

12.     The voluntary Chapter 11 case was filed by attorney Amy E. Gillen of the Law Office of Amy E. Gillen; however, Ms. Gillen is presently employed by Singh Law Firm, and agreed to act as local counsel, filing the petition using her own law firm, the Law Office of Amy E. Gillen, purely for administrative reasons.

13.     Ms. Gillen has been employed by Singh Law Firm for approximately five (5) years, and has regularly performed legal services in coordination with Singh Law Firm in bankruptcy matters. Significantly, neither Ms. Gillen nor the Law Office of Amy E. Gillen received a retainer from the Debtor. The Debtor's engagement was with Singh Law Firm only, and Ms. Gillen's compensation is derived solely from Singh Law Firm as her capacity as an attorney employed with the firm.

14.     Immediately following the emergency filing of the petition, on April 3, 2026, Jaitegh Singh, Principal Attorney of Singh Law Firm, sought pro hac admission to this Court. While Mr. Singh's initial pro hac application was denied, Mr. Singh was ultimately granted pro hac admission on April 14, 2026, prior to the Conversion Date.

15.     At all relevant times, Ms. Gillen acted in coordination with Singh Law Firm, and the legal services rendered in connection with the Debtor's Chapter 11 case were provided as part of the services of Singh Law Firm.

16.     The Debtor retained Singh Law Firm, P.A. as counsel in connection with the Chapter 11 filing and administration of the case, and Singh Law Firm provided legal services throughout the Chapter 11 Period.

### Relief Requested

17.     In connection with the filing and administration of the Chapter 11 Period of this case, the Debtor required and requested legal advice and services, including but not limited to the following:

a.  preparation and review of bankruptcy filings and documents necessary to the commencement and administration of this case;

b.  advice regarding the Debtor's rights, duties, and obligations as debtor-in-possession;

c.  analysis of issues relating to cash collateral, liquidity, ongoing business operations, and preservation of estate assets;

d.  communications and negotiations with creditors, parties in interest, and the Office of the United States Trustee;

e.  assistance with compliance issues arising in the Chapter 11 case; and

f.  taking all other necessary actions incident to the preservation and administration of the estate during the Chapter 11 Period.

18.     The Debtor seeks entry of an order authorizing the employment of Singh Law Firm as counsel to the Debtor-in-Possession for the limited period beginning on the Petition Date and ending on the Conversion Date, the Chapter 11 Period.

19.     Singh Law Firm is well qualified to represent the Debtor based on its experience in bankruptcy, restructuring, corporate, and litigation matters, and based on its familiarity with the

Debtor's business, financial condition, operational issues, and legal needs during the Chapter 11 Period.

20.     Singh Law Firm's attorneys and professionals provided services necessary to the administration of the Chapter 11 case, including advice concerning the Debtor's duties as debtor-in-possession, preservation of estate assets, communications with creditors and the Office of the United States Trustee, cash-flow and operational issues, and matters necessary to protect the Debtor's business and estate.

21.     Neither Singh Law Firm nor, to the best of the Debtor's knowledge, any attorney or professional of Singh Law Firm is a creditor, equity security holder, or insider of the Debtor, except to the extent Singh Law Firm may hold an administrative claim for unpaid professional fees subject to approval by this Court.

22.     Neither Singh Law Firm nor, to the best of the Debtor's knowledge, any attorney or professional of Singh Law Firm was employed by the Debtor as an officer, director, member, manager, shareholder, partner, employee, or other insider during the two years prior to the Petition Date.

23.     Neither Singh Law Firm nor, to the best of the Debtor's knowledge, any attorney or professional of Singh Law Firm holds or represents an interest materially adverse to the estate, creditors, equity security holders, or any other party in interest, by reason of any direct or indirect relationship to, connection with, or interest in the Debtor, or for any other reason.

24.     To the best of the Debtor's knowledge, Singh Law Firm is a disinterested person within the meaning of § 101(14) of the Bankruptcy Code and satisfies the requirements of § 327(a) of the Bankruptcy Code.

25.     Singh Law Firm's connections with the Debtor, creditors, parties in interest, their respective attorneys and accountants, the Office of the United States Trustee, and any person employed in the Office of the United States Trustee are disclosed in the Affidavit of Jaitegh Singh filed contemporaneously herewith pursuant to Bankruptcy Rule 2014 and Local Rule B-2014-1. See Exhibit A.

26.     The Affidavit also discloses that the voluntary petition was electronically filed by Amy E. Gillen as local counsel using Ms. Gillen's firm's existing filing credentials, the Law Office of Amy E. Gillen, due to the emergency nature of the filing and the compressed timeline. Ms. Gillen has worked with Singh Law Firm for approximately five (5) years, and agreed to act as local counsel and performed services in coordination with Singh Law Firm in connection with this case. That filing circumstance was technical in nature and does not alter the Debtor's request to employ Singh Law Firm as counsel for the Chapter 11 Period.

27.     Singh Law Firm has not received any retainer from the Debtor; Ms. Gillen also has not received any retainer from the Debtor. A disclosure of compensation pursuant to Bankruptcy Rule 2016 and § 329 of the Bankruptcy Code has been filed or will be filed contemporaneously herewith, as applicable.

**<u>Basis for Retroactive Approval and Exceptional Circumstances</u>**

28.     Retroactive approval is warranted under the circumstances of this case.  The Seventh Circuit has held that the equitable aspects of bankruptcy proceedings permit the court to retroactively approve the employment of debtor's counsel under the proper circumstances. *In re Banhalmi,* 84 B.R. 123, 127, 1988 Bankr. LEXIS 305, *11, 17 Bankr. Ct. Dec. 417 (citing Stolkin v. Nachman, 472 F.2d 222 (7th Cir. 1973).  See also *In re Renaissance Residential of Countryside, LLC,* 423 B.R. 848, 853 (Bankr. N.D. Ill. 2010).

29. In determining whether retroactive approval is appropriate, courts consider equitable factors, including whether the applicant or another party bore responsibility for seeking approval, whether time pressure required services to begin immediately, the length and impact of the delay, etc. *In re Renaissance,* at 859.

30. Because of the complex and exigent circumstances existing at the outset of the case, Singh Law Firm was required to begin rendering necessary legal services immediately on or about the Petition Date in order to avoid harm to the Debtor and its estate.

31. The Debtor sought assistance from Singh Law Firm under severe and deteriorating financial conditions immediately preceding the Petition Date. While it appeared that Debtor was a viable Chapter 11 candidate, the Debtor's management faced mounting operational pressure and limited available options to stabilize the business. Under these circumstances, Chapter 11 bankruptcy protection was determined to be the only viable means to preserve operations, attempt to maintain workforce continuity, and continue to service its existing customers.

32. The Debtor's principal objective at the outset of the Chapter 11 case was to maintain ongoing operations and preserve employment to the extent possible. However, despite initial efforts to stabilize the business, the loss of employees and continuing financial distress made operations increasingly difficult. Ultimately, the Debtor determined that continued Chapter 11 operations were no longer feasible, and the decision was made to convert the case to Chapter 7 on April 15, 2026.

33. The failure to obtain prior approval before services commenced was not the result of bad faith or an attempt to evade the requirements of the Bankruptcy Code or Bankruptcy Rules. Rather, the compressed timeline surrounding the filing and the immediate need to stabilize the Debtor's affairs required counsel to begin work without delay.

34.     Further, the Chapter 11 Period for which approval is sought is narrow and definite: from March 31, 2026 through April 15, 2026 only. Singh Law Firm does not seek employment beyond the Conversion Date and does not seek to represent the Chapter 7 estate absent separate order of this Court, if any.

35.     Approval of Singh Law Firm's employment for the limited pre-conversion period will not prejudice the estate or parties in interest. Instead, it will properly align the record with the services actually and necessarily provided during the Chapter 11 phase of the case.

36.     The services rendered by Singh Law Firm during the Chapter 11 Period were necessary to the administration of the estate, the preservation of the Debtor's business operations and assets, and were beneficial to the estate.

37.     Given the emergency nature of the engagement, the limited retroactive period requested, the absence of any retainer, the necessity of the services performed, and the good-faith commencement of representation under severe time pressure, the Debtor respectfully submits that retroactive approval is appropriate.

38.     In addition, Singh Law Firm's involvement during the Chapter 11 Period contributed to the preservation and protection of estate property, including vehicles, equipment, and other operational assets. Singh Law Firm coordinated with the Debtor's management and workforce to promote orderly operations, maintain accountability over assets, and reduce the risk of loss, damage, or dissipation of property. These efforts facilitated the orderly transition of the Debtor's assets to the Chapter 7 estate and provided a direct and continuing benefit to creditors by helping preserve estate value.

**<u>Compensation Terms</u>**

39.     As further set forth in the engagement terms between the Debtor and Singh Law Firm, Singh Law Firm billed for services rendered during the Chapter 11 Period at its customary hourly rates for work of this nature.

40.     The standard hourly rates charged by the professionals proposed as counsel are as follows:

| | |
|---|---|
| J.T. Singh | $650.00 per hour |
| Emily Garner | $550.00 per hour |
| Amy Gillen | $450.00 per hour |
| Paralegals/Legal Assistants | $175.00 per hour |

41.     Time is billed in tenths of an hour.

42.     As stated above, no retainer was paid to Singh Law Firm (or Ms. Gillen and the Law Office of Amy E. Gillen) prior to the Petition Date or thereafter. The Debtor is only responsible to fees to Singh Law Firm and not to the Law Office of Amy E. Gillen or Ms. Gillen personally.

43.     Singh Law Firm understands that no compensation may be paid absent further application and order of this Court pursuant to the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

WHEREFORE, the Debtor respectfully requests that the Court enter an Order:

A. authorizing the employment of Singh Law Firm, P.A. as counsel to the Debtor-in-Possession effective retroactively from March 31, 2026 through April 15, 2026;

B. limiting such approval solely to services rendered during the Chapter 11 Period prior to conversion of this case; and

C. granting such other and further relief as the Court deems just and proper.

Dated: _____April 28_____, 2026

Respectfully submitted,
/s/ Jaitegh Singh
Jaitegh Singh

SINGH LAW FIRM, P.A.
8045 Leesburg Pike, Suite 510
Tysons, VA 22102
Telephone: +1-866-746-4452
Email: jsingh@singhfirm.com

Proposed Counsel to the Debtor-in-Possession
for the period March 31, 2026 through April 15, 2026 only

**Exhibit A - <u>AFFIDAVIT OF JAITEGH SINGH</u>**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

|  |  |
|---|---|
| In re:<br><br>JUMPSTART<br>COMMUNICATIONS LLC<br><br>Debtor. | Case No. 26-10364<br><br>Chapter 7 |

**AFFIDAVIT OF JAITEGH SINGH IN SUPPORT OF APPLICATION TO EMPLOY SINGH LAW FIRM, P.A. AS COUNSEL TO THE DEBTOR-IN-POSSESSION EFFECTIVE RETROACTIVELY AS OF THE PETITION DATE THROUGH THE CONVERSION DATE**

1. I am the Principal Attorney of Singh Law Firm, P.A. ("Singh Law Firm"), proposed counsel for Jumpstart Communications LLC, the Debtor and former debtor-in-possession in this case.

2. I submit this Affidavit in support of the Application to Employ Singh Law Firm, P.A. as Counsel to the Debtor-in-Possession Effective Retroactively as of the Petition Date Through the Conversion Date.

3. Singh Law Firm's offices are located at 8045 Leesburg Pike, Suite 510, Tysons, Virginia 22102; 701 Brickell Avenue, Suite 1550, Miami, Florida 33131; and 305 Broadway, Floor 7, New York, New York 10007.

4. Singh Law Firm provided legal services to the Debtor during the Chapter 11 phase of this case, from March 31, 2026 through April 15, 2026 only.

5. Singh Law Firm does not seek employment for post-conversion Chapter 7 services by this Affidavit or the related Application.

6.     Neither Singh Law Firm nor, to the best of my knowledge, any attorney or professional of Singh Law Firm is a creditor, equity security holder, or insider of the Debtor, except to the extent Singh Law Firm may hold an administrative claim for unpaid professional fees subject to approval by this Court.

7.     Neither Singh Law Firm nor, to the best of my knowledge, any attorney or professional of Singh Law Firm is or was employed by the Debtor as an officer, director, member, manager, shareholder, partner, employee, or other insider during the two years prior to the Petition Date.

8.     Neither Singh Law Firm nor, to the best of my knowledge, any attorney or professional of Singh Law Firm has held any position with the Debtor other than as legal counsel.

9.     Neither Singh Law Firm nor, to the best of my knowledge, any attorney or professional of Singh Law Firm holds or represents an interest materially adverse to the estate, creditors, equity security holders, or any other party in interest, by reason of any direct or indirect relationship to, connection with, or interest in the Debtor, or for any other reason.

10.    To the best of my knowledge, Singh Law Firm is a "disinterested person" within the meaning of 11 U.S.C. § 101(14).

11.    Pursuant to Bankruptcy Rule 2014 and Local Rule B-2014-1, Singh Law Firm has reviewed its connections with the Debtor, creditors, parties in interest, their respective attorneys and accountants, the Office of the United States Trustee, and persons employed in the Office of the United States Trustee.

12.    Except as disclosed herein, Singh Law Firm does not have any relevant connections with the Debtor, creditors, parties in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the Office of the United States Trustee.

13. To the best of my knowledge, Singh Law Firm has not represented the Debtor or any affiliate of the Debtor during the twelve months prior to the Petition Date, except in connection with the preparation and filing of this bankruptcy case.

14. To the best of my knowledge, Singh Law Firm has not been employed by the Debtor or any affiliate of the Debtor during the two years prior to the Petition Date, except as legal counsel in connection with the preparation and filing of this bankruptcy case.

15. To the best of my knowledge, Singh Law Firm has not represented any officer, director, member, manager, shareholder, partner, guarantor, or other insider of the Debtor in any matter related to this bankruptcy case.

16. To the best of my knowledge, Singh Law Firm has not represented any scheduled creditor of the Debtor in any matter related to this bankruptcy case. Any representation of creditors or parties in interest, if any, has been or will be in matters wholly unrelated to this bankruptcy case.

17. The voluntary Chapter 11 case was filed by attorney Amy E. Gillen of the Law Office of Amy E. Gillen; however, Ms. Gillen is presently employed by Singh Law Firm, and agreed to act as local counsel, filing the petition using her own law firm, the Law Office of Amy E. Gillen, purely for administrative reasons.

18. Due to the emergency nature of the filing and the compressed timeline, the petition was filed by the Law Office of Amy E. Gillen, Ms. Gillen's firm which acted as local counsel; the petition was filed under Ms. Gillen's firm for purely administrative reasons.

19. At all relevant times, Ms. Gillen acted in coordination with Singh Law Firm, and the legal services rendered in connection with the Debtor's Chapter 11 case were provided as part of Singh Law Firm's professional services.

20. Jaitegh Singh, Principal Attorney of Singh Law Firm, P.A., sought admission to practice before this Court pro hac vice. As reflected on the docket, the Order granting pro hac vice admission was entered on April 14, 2026 prior to the Chapter 7 conversion.

21. Singh Law Firm may have represented, and may continue to represent, certain creditors or parties in interest in matters wholly unrelated to this bankruptcy case. Any such representation is unrelated to this case and is not adverse to the Debtor or the estate in this case.

22. Should a controversy arise in this case creating the need to assert or defend an adversary proceeding or contested matter involving a creditor or party in interest that is or was a client of Singh Law Firm, Singh Law Firm will not represent both the Debtor and such creditor or party in interest in such adversary proceeding or contested matter absent consent and compliance with applicable professional responsibility rules, Bankruptcy Code provisions, Bankruptcy Rules, and orders of this Court.

23. If Singh Law Firm cannot represent the Debtor in any such adversary proceeding or contested matter, Singh Law Firm expects that separate special counsel may be utilized, subject to further order of this Court if required.

24. Neither Singh Law Firm nor the Law Office of Amy E. Gillen received any retainer from the Debtor before or after the Petition Date.

25. Singh Law Firm's compensation arrangement is based on hourly billing. The applicable hourly rates are: J.T. Singh — $650.00 per hour; Emily Garner — $550.00 per hour; Amy Gillen — $450.00 per hour; and paralegals/legal assistants — $175.00 per hour. See Exhibit 1.

26. Time is billed in tenths of an hour.

27.     No agreement exists for the division of fees or compensation between Singh Law Firm and any other person or entity, except any agreement that may exist for sharing compensation among attorneys, employees, or regular professionals of Singh Law Firm.

28.     Singh Law Firm understands that compensation for services rendered in this case is subject to further application and approval by this Court.

29.     Based upon the foregoing, I believe that Singh Law Firm is disinterested, does not hold or represent an interest adverse to the estate, and is qualified to serve as counsel to the Debtor-in-Possession for the limited Chapter 11 period from March 31, 2026 through April 15, 2026.

I affirm under penalties for perjury that the foregoing statements are true.

Dated: _____April 28_____, 2026

/s/ Jaitegh Singh
Jaitegh Singh
Principal Attorney
Singh Law Firm, P.A.

**Exhibit 1 – <u>RETAINER</u>**



**SINGH LAW FIRM, P.A.**

8045 Leesburg Pike
Suite 510
Tysons, VA 22102

701 Brickell Avenue
Suite 1550
Miami, FL 33131

305 Broadway
Floor 7
New York, NY 10007

### AGREEMENT TO EMPLOY ATTORNEY

This AGREEMENT TO EMPLOY ATTORNEY is entered into between Jumpstart Communications ("Client"), and SINGH LAW FIRM P.A. ("Attorney").

1. **CONDITIONS**

   This agreement will not take effect, and Attorney will have no obligation to provide legal services, until Client returns a signed copy of this Agreement and pays the deposit called for under paragraph three.

2. **SCOPE AND DUTIES**

   Client hires Attorney to provide legal representation in a Chapter 11 bankruptcy proceeding to be filed in the United States Bankruptcy Court for the Northern District of Indiana.

   Attorney shall provide those legal services reasonably required to represent Client and shall take reasonable steps to keep Client informed of progress and to respond to Client's inquiries. Client shall be truthful with Attorney, cooperate in the preparation and trial of the case, appear on reasonable notice for depositions and Court appearances, keep Attorney informed of developments, abide by this Agreement, pay Attorney's bills on time and keep Attorney advised of Client's address, telephone number, and whereabouts. Client agrees not to compromise the claim without discussing the matter with Attorney, in advance, and Attorney is not authorized to compromise the claim without Client's consent.

   Attorney will at all times act on your behalf to the best of Attorney's ability. There is no guarantee as to the outcome or recovery in your matter. Any expressions we make concerning the outcome are expressions of our best professional judgement only and do not constitute any guarantees.

**OTHER TERMS:**  N/A

Doc ID: 9c93bd2223bec7f0d087a8c6dc8e7f1e1f93b94f

3.  **DEPOSIT**

Client agrees to pay Attorney a retainer fee deposit at the time Attorney is hired, which money is to be held in trust. A normal retainer fee deposit is $50,000.00 USD. Such retainer and any other such replenishing payments must be remitted to the Firm Administrator for deposit. Cases in which hearing dates are already set and pending, or that will otherwise require extraordinary immediate efforts, may require a larger retainer fee deposit, which is specified at the end of Section 2 below if applicable.

The amount of the retainer is not intended to serve as an estimate of the fees likely to be incurred by you. It is merely a way to reduce the credit risk resulting from the fact that our charges are determined after the services are rendered.

Client hereby authorizes Attorney to withdraw sums from the trust account to pay the costs, expenses, and fees for legal services incurred in Client's case. However, it is intended that the retainer fee deposit will be held and used as a security deposit until the conclusion of the case and Client's payment of all outstanding costs, expenses, and fees for legal services. Attorney will charge all costs, expenses, and fees for legal services incurred during each monthly billing cycle against the retainer fee deposit, and all such charges against Client's account are to be replenished within 14 days from the date of mailing of each Semi-Monthly statement. Failure by the Client to replenish the original retainer fee deposit to its original amount within 14 days of receipt of the statement will be cause for Attorney to withdraw from the case.

In other words, Client agrees to pay Attorney in advance for all work to be performed, by maintaining at all times a retainer fee deposit which is to be replenished within 14 days of the Semi- Monthly statement, each statement, during the course of Attorney's representation.

The retainer fee deposit is fully refundable. Any money not used for costs, expenses, and fees for legal services will be refunded to the Client at the conclusion of the case.

In addition to the Semi-Monthly replenishment of the initial retainer fee deposit, Attorney may from time to time require additional deposits of retainer funds in anticipation of an evidentiary hearing, lengthy deposition, trial, or other large cost, whenever Attorney reasonably believes that the sum on retainer is insufficient to cover the expected costs, expenses, and fees for legal services likely to be incurred through the next billing cycle. Client's failure to deposit such an additional retainer by the specified date will be cause for Attorney to withdraw from the case.

No portion of any "flat fee" specified in this Agreement for specific items will be refunded, even if the accrued costs and fees are less than the non-refundable fee.

4.  **CONTACTS AND COMMUNICATION**

Doc ID: 9c93bd2223bec7f0d087a8c6dc8e7f1e1f93b94f

Client acknowledges that the normal operation of Attorney's office has been explained, and specifically that communications are normally maintained through the paralegal staff, and that the "team approach" utilized in Attorney's office makes it likely that different tasks will be attended to by different people. Client understands that calls should normally be placed to, and normally will be returned by, the paralegal case manager assigned by Attorney to manage Client's case. Client understands that documents will frequently be drafted by one member of Attorney's office staff (often a paralegal), and then reviewed or edited by another (usually an attorney), sometimes going through multiple drafts or reviews until completed, depending on the nature of the document.

Client has been informed that Attorney's usual mode of keeping clients informed about the status of pending matters in this office is to copy all incoming and outgoing written communications, and Client has been directed to retain all such copies, and periodic billing statements, so that Client's file should be virtually identical to Attorney's file as the case progresses.

Client understands that for the purpose of preserving attorney/client confidentiality, and other reasons, all contacts between Client and any member of attorney's staff are to be conducted *at the office*, whether in person or by phone, and not at the home of a member of Attorney's staff, or a cell phone, etc., except where strictly necessary and where advance arrangements for such contacts have been made at the office. It is understood that any meetings outside of normal office hours (i.e., 8:00 a.m. to 5:00 p.m.) or phone calls to a member of Attorney's staff at home or by cell phone are extraordinary events and are discouraged. Where Client's schedule or other requirements necessitate phone calls or meetings outside of regular office hours, or at the home or cell phone of any member of Attorney's staff, a premium rate of 2 times the normal billing rate for that staff member applies to all time taken for such meeting or phone call.

Client understands that Attorney's office works by appointment and scheduling, such that all client meetings must be by appointment. In the absence of other arrangement made in advance by an attorney in Attorney's office, appointments for office visits should be made through the paralegal case manager assigned to the case.

As a general proposition, *everything* you tell us, or we tell you, is and will be treated as confidential information, protected by the "attorney-client privilege" against disclosure. The attorney-client privilege protects oral and written communication between us that are related to the performance of legal services - subject to limited exceptions – as long as you do not waive the privilege. The privilege can be inadvertently waived if you disclose all or part of those communications to anyone else. If the client is a legal entity, waiver can occur through disclosure to any individual – even a person within the entity – who is not authorized by the entity to be involved in the decision-making process with respect to the matter. The right to waive the privilege belongs to the client named in the letter, who can choose to waive the privilege at any time.

In regard to exceptions to attorney-client privilege, there are certain rare exceptions. For

Page 3 of 12

Doc ID: 9c93bd2223bec7f0d087a8c6dc8e7f1e1f93b94f

example, we might be required to reveal information necessary to prevent death or substantial bodily harm. However, if the client shares privileged information with third parties it loses that protection – the third party (even relatives or financial backers) can be deposed or examined at trial as to what they know and why they know it. Additionally, the applicable ethics rules *prohibit* us from taking direction from, or giving confidential information to, a third party who happens to be supporting the client or paying the client's legal costs.

In certain *extremely* rare circumstances, we permit contact by, and either taking information from, or giving information to, such third parties, at our sole discretion. The normal rule, however, and what you should expect to apply, is that we will not respond to inquiries from any third party, no matter how trusted they might be by the client, and third parties may not be the conduit for the passing of confidential information to, or from, the client.

## 5.  LEGAL FEES

Client agrees to pay an initial retainer in the amount of $50,000.00 USD. Legal services will be billed against this retainer at the following hourly rates: $650.00 USD per hour for J.T. Singh, $550.00 USD per hour for Emily Garner, $450.00 USD per hour for Amy Gillen, and $175.00 USD per hour for paralegals/legal assistants. All personnel billing for their time will do so in in tenths of an hour (i.e., 6-minute) increments and will round to the nearest such increment.

Hourly rates are guided by the time and labor required; the novelty and difficulty of the legal issues involved; the legal skills required to perform the particular services; legal research required; the fee customarily charged by comparable firms for similar legal services; the amount of money involved or at risk; the results obtained; and time constraints imposed by either you or the circumstances. Hourly rates are assigned to individual attorneys or professionals working on your matter and are based on each professional's years of experience, specialization, training, and level of professional attainment, and are subject to change.

It is understood by Client that **ALL** time expended by personnel in Attorney's office on Client's case should be expected to be billed at the rate for those personnel. It is not possible to list all the work that may be required in working on Client's case, but it is understood that such work (by attorneys, or legal assistants/paralegals) includes time spent on phone calls to or from Client, or on Client's behalf, reviewing or handling incoming documents from Client, the opposing party, the Court, or any third party, and drafting, preparing, editing, reviewing, etc., pleadings, letters, documents, or materials, etc., performing legal or factual research, travel to or from hearings or meetings, depositions, time actually spent in such hearings and meetings (including time spent waiting for the matter to be called) and any other activities related to this matter.

In short, Client is informed and understands that the time spent by the personnel of Attorney's office attending to Client's case will normally be billed at the rate of the persons who spent

Doc ID: 9c93bd2223bec7f0d087a8c6dc8e7f1e1f93b94f

the time.

Client authorizes Attorney to use associate counsel, legal assistants, or paralegals for such work on this case as Attorney might deem appropriate. Such persons shall be billed at their regular billing rate. Client acknowledges and agrees that such staff personnel may be utilized whenever deemed appropriate and directs Attorney to apportion work at Attorney's discretion.

Under certain circumstances, more than one member of Attorney's staff may work on a matter for Client simultaneously, in which case both members of Attorney's staff should be expected to bill for the time spent. An example would include a trial or contested evidentiary hearing, during which in Attorney's discretion the full participation of more than one person is necessary to properly attend to Client's case.

The same rules apply to sequential or duplicative work. For example, it might be necessary to charge Client for a paralegal or attorney to review some or all of the case file, where immediate familiarity with the facts is required in preparation for a hearing, etc. However, Client will normally not be charged for time spent that is attributable to Attorney's internal staffing assignments, etc., such as one case manager reviewing a file when taking over a file from another case manager.

Notwithstanding the expectation that all time spent on Client's case will be billed, Attorney may, at Attorney's discretion, elect to "write off" or "no charge" certain time actually expended by attorneys or legal assistants/paralegals on Client's behalf. Client acknowledges being on notice that any such write-offs are **discretionary** by Attorney and are expressly **contingent** on there being no dispute regarding payment of the remaining items billed to the Client. As specified below in the section of this Agreement labeled "STATEMENTS, BILLING INQUIRIES, AND FEE DISPUTES," all "no charge" or "written off" costs, expenses, and fees for legal services will be considered payable in full in the event of a formal dispute or adjudication of a lien, regarding Client's bill.

The hourly fees quoted above are subject to increase from time to time. Attorney will give notice in writing at least thirty days prior to any increase in hourly fees. If Client does not wish to be charged at the new rates, Client agrees to pay Attorney in full for services up to the date of the expected increase and terminate representation by Attorney. Client understands that if Attorney continues to represent Client past the date of the increase, the new fees will be in effect and Client agrees to pay those increased fees for all services rendered thereafter. Likewise, Attorney may modify other terms of this Agreement, similarly notifying Client thirty days in advance of the change, and with the same options for Client to terminate representation, and the same result (the new Agreement goes into effect) if Client does not terminate representation and Attorney continues to represent Client past the date of the proposed change.

If a Court awards attorney's fees to Client (or to Attorney on Client's behalf), and such sums are actually collected, they shall be applied against any outstanding charges on

Doc ID: 9c93bd2223bec7f0d087a8c6dc8e7f1e1f93b94f

Client's bill. Client, however, remains responsible for payment of Attorney's services. A court order awarding attorney's fees from the opposing party does **not** relieve Client of the primary responsibility for paying Attorney's bill, or make any work done to collect the attorney's fees awarded any different from any other work performed by Attorney. Any attorney's fees awarded and actually collected that are not needed to pay Client's bill with Attorney (or replenish the retainer fee deposit) shall be paid to Client.

Likewise, Client is aware that the Court could order Client to pay fees or costs to the other side of a case.

Unless stated otherwise, your payment of our fees is not contingent on the outcome of the matter or the result obtained. Legal matters frequently take courses that cannot be predicted, and no guarantee can be given concerning either the outcome, recovery, or total legal fees and costs incurred in arriving at that outcome.

## 6. COSTS AND EXPENSES

### A.  INITIAL COSTS

An initial, non-refundable, $25.00 will be billed to Client, from the first funds deposited with Attorney, to purchase the initial file materials, videotape, folders, etc., and to pay for access to the computer-assisted legal research service reserved for all cases in the event access to the service is needed.

Client agrees that if Attorney advances or incurs any costs in this case, including but not limited to costs of investigation, filing fees or other court fees, depositions, process server or witness fees, photographs, exhibits, outside photocopying, the expenses incurred incident to travel on Client's behalf (including lodging and meals), messenger and other delivery fees, parking, consultant's fees, express mail charges, timed-increment computer research charges, or other similar items, such charges will be paid by Client out of funds on retainer or promptly upon being billed

### B.  EXPERTS, CONSULTANTS, AND INVESTIGATORS

It may become necessary in the preparation of Client's case for Attorney to hire expert witnesses, consultants, and/or investigators. Attorney will not hire such persons unless Client agrees to pay their fees and charges, but Attorney will select which such persons should be hired. It is understood that Client's refusal to authorize hiring of such persons, when considered necessary by Attorney, could greatly injure Client's case, and if the absence of such persons makes it impossible, in Attorney's discretion, to continue with the case, Attorney may withdraw from the case.

### C.  RETURNED CHECK FEE

Should Client remit a payment to this office by way of check and it is returned for insufficient funds or stop payment, a $25.00 returned check fee will be assessed to

Doc ID: 9c93bd2223bec7f0d087a8c6dc8e7f1e1f93b94f

Client.

## 7. STATEMENTS, BILLING INQUIRIES, AND FORMAL FEE DISPUTES

Attorney will send Client periodic statements (semi-monthly) for costs, expenses, and fees for legal services incurred.  The sum indicated on such statements is owed upon generation of the statement and must be paid within 14 days of the statement date.  Normally, Client should have a retainer fee deposit in Attorney's trust account on the date that statements are generated, in which case the costs, expenses, and fees for legal services owed by Client to Attorney will be paid out of the Client's trust balance upon generation of the statement.

In the event Client does not fully replenish the retainer fee deposit within 14 days of a billing statement, Attorney shall have the option of immediately withdrawing from representation.  Interest at the rate of 12 percent annually (1 percent per month) will be charged on any unpaid balance in excess of the sum held as a retainer fee deposit, beginning on the date a statement showing such an outstanding balance is generated. The interest provision is **not** an agreement to extend credit but is a method of compensating Attorney for delayed payment.

Obviously, it is possible for mistakes to happen, and Client is not expected to pay for any charges that are incorrect. Client may call or e-mail Attorney's office with an inquiry concerning billing statements (directed to the Firm Administrator). Most actual errors can be resolved with a simple phone call, and Attorney's staff will inform Client whether a mistake is acknowledged, and promptly send an amended statement showing any adjustment or correction resulting from any such call.

Whether or not Client calls with such an inquiry, any dispute as to the accuracy or validity of any billed charges, or requests for adjustment of any costs, expenses, or fees for legal services billed to Client must be made in writing to Attorney's Firm Administrator within thirty days of the date of the statement containing that cost, expense, or fee for legal services. If Client does not do so within thirty days of a billing statement, the statement will be conclusively presumed to be correct.

In other words, **if Client does not contact us in writing within thirty days of a billing statement, Client will have irrevocably agreed that the statement is accurate and correct.**  Any person ever reviewing any dispute regarding charges on a billing statement is asked to honor this provision, since it is an essential term to Attorney's agreement to represent Client in this case.

As stated above, while Client should presume that all time spent attending to Client's case by any member of Attorney's staff will be billed, Attorney may elect to "write off" or "no charge" some costs, expenses, and fees for legal services.  Any such write-offs are **discretionary** by Attorney and are expressly **contingent** on there being no dispute regarding payment of the remaining items billed to Client, initiated by either Attorney or Client.

Doc ID: 9c93bd2223bec7f0d087a8c6dc8e7f1e1f93b94f

If Attorney files a lien to recover unpaid fees and/or costs incurred on client's behalf, or if Client seeks to formally dispute Attorney's billings, by initiating mandatory arbitration, all "write off" or "no charge" costs, expenses, and fees for legal services reflected on any statement to Client will revert to being fully billed, and be **additional** sums owed to Attorney by Client, in **addition** to the sum disputed by Client.

These provisions are explicitly written to **prevent** a situation where Attorney reduces Client's bill by writing off costs, expenses, and fees for legal services during a case, and then Client seeks to reduce the sums owed further by disputing Client's responsibility to pay the reduced sum.  They are intended to provide incentives for both Attorney and Client to resolve, informally and **promptly**, any questions or concerns about the legitimacy of any item billed on any statement, and to provide certainty that once a statement is thirty days old, the costs, expenses, and fees for legal services reflected on that statement are agreed by Attorney and Client to have been accurate and correct

In accordance with the Uniform Commercial Code, no payments made to Attorney for less than the full sum owed shall constitute payment in full, even if that notation is placed on the payment instrument, unless Attorney and Client both sign a separate written agreement specifically permitting such payment to constitute a payment-in-full.

Client agrees to pay any fees and costs that are incurred by Attorney to collect fees, costs, or expenses from Client, including reasonable attorney's fees.

## 8.  MANDATORY FEE DISPUTE ARBITRATION

Any dispute which may arise during our engagement, whether over the quality or the quantity of services provided, the amount of our fees or the payment of our fees, shall be submitted to and resolved by binding arbitration. As our Attorneys are licensed in several states, the location and venue of any dispute shall be as follows:

**For any matters arising out of New York, New Jersey, Indiana, Alabama, North Carolina, and Colorado,** all fee disputes shall be arbitrated by Part 137 of the Rules of Chief Administrator of the New York Courts. You have read the Part 137 procedures and board-approved rules of the local program designated to hear fee disputes (available online at the court's website https://www.nycourts.gov/admin/feedispute/Standards.pdf ) and you make a knowing and informed consent to 1) waive your right to *de novo* review of the fee dispute arbitration panel's decision, which you agree shall be final and binding; 2) agree to arbitrate fee disputes arising between us, irrespective of the amount involved in the fee dispute, including those involving claims of over $50,000.00; and 3) agree that arbitration shall take place in New York County, New York.

**For Florida matters only,** a duly appointed arbitrational panel of the Florida Bar Circuit Arbitration Committee will act as arbitrators and hear the matter pursuant to the Florida Supreme Court Rules, Chapter 14 – Fee Arbitration Rule, or any successor rule. Members

Doc ID: 9c93bd2223bec7f0d087a8c6dc8e7f1e1f93b94f

of the arbitration panel shall be vested with all the powers and shall assume all the duties granted and imposed upon arbitrators by Florida law, including the power to determine the manner in which the arbitration proceeding will be conducted. All parties shall be entitled to be heard and shall have the right to be represented by an attorney at hearing.

Judgement may be entered on the arbitration award in any court of competent jurisdiction and any award rendered shall be binding on the parties. The prevailing party shall be entitled to an award of its reasonable attorney fees and costs.

## 9. LIENS AND ADJUDICATION

Client hereby grants Attorney a lien on any and all claims or causes of action that are related to the subject of Attorney's representation under this Agreement.  Attorney's lien will be for any sums due and owing to Attorney at the conclusion of Attorney's services. We will not settle cases without your consent. For contingency related matters, if, at any time, in our opinion, a reasonable offer of settlement is made, we may recommend to you that it be accepted. After such a recommendation has been made, should you unreasonably withhold acceptance, we shall have an option to withdraw as attorneys of record and have a lien for reasonable attorneys' fees on any settlement or recovery ultimately made.  The lien will attach to any recovery Client may obtain, whether by arbitration award, judgment, settlement, or otherwise.  Any amounts received by Attorney's office on Client's behalf may be used to pay Client's account.

Attorney will retain possession of Client's file and all information therein until full payment of all costs, expenses, and fees for legal services, subject to turnover or destruction of the file as set out in Paragraph 9. Client consents to the district court's adjudication of any such lien and during the pendency of the underlying action without requiring the filing of a separate action, regardless of whether any other action might be or has been filed by either Attorney or Client against the other, including any action alleging malpractice.

## 10. DISCHARGE AND WITHDRAWAL

Client may discharge Attorney at any time, although Client understands that court rules might still require Attorney to file a motion to withdraw. Attorney may withdraw at any time at Attorney's discretion. In either such circumstance, Client agrees to sign the documents necessary to permit Attorney to withdraw.

Client has been informed that among the events that should be expected to cause Attorney's withdrawal from this case are Client's breach of any portion of this Agreement (including its payment provisions), Client's refusal to cooperate with Attorney or to follow Attorney's advice on a material matter, or any other fact or circumstance that would render Attorney's continuing representation unlawful, unethical, or impractical.

Specifically, while it is the province of the Client to identify the "objectives of representation," a lawyer is not required to pursue objectives or employ means simply

Doc ID: 9c93bd2223bec7f0d087a8c6dc8e7f1e1f93b94f

because a client may wish that the lawyer do so. The terms of a lawyer's representation may exclude specific objectives or means, including those that a lawyer regards as repugnant or imprudent.

If Client shall desire to retain other counsel, then Attorney shall be paid the amount then due and owing for work performed for Client.

## 11. REPRESENTATION OF OTHER PARTIES

Attorney is ethically prohibited from representing clients if the representation creates a conflict of interest. A conflict may arise either from a relationship we have with another client or from other interests or relationships that could be perceived to affect our ability to exercise independent judgement and zealously pursue your objectives. In some circumstances, the representation can continue if both clients consent after full disclosure.

We have procedures designed to identify potential conflicts of interest in advance, but they are not foolproof. If we become aware of a conflict of interest, we will call it to your attention and take other appropriate action. You agree to let us know if you become aware of such a conflict.

As an independent firm, we represent a wide variety of clients. The fact that another of our clients may compete with you does not in itself constitute a conflict of interest. However, any information you provide to us concerning your matters will be kept confidential.

## 12. FUTURE MATTERS

Unless otherwise agreed to in writing, the same terms will apply to any work performed by us in the future, even if it is unrelated to the matter presently being handled.

## 13. INSURANCE

To the extent you are involved in litigation, you may have insurance that will cover the claim or attorneys' fees which arise out of such a claim. You agree that we are not responsible for notifying your insurance company of the claim or handling any aspect of the claim unless we agree to do so in writing separate and apart from these terms.

## 14. REVOCABLE POWER OF ATTORNEY

Client expressly authorizes Singh Law Firm, P.A., following client's approval of a settlement, to endorse client's name on settlement documents, including, but not limited to releases, hold harmless agreement(s), and settlement drafts on client's behalf, and to forward client's portion of the settlement proceeds to client after payment of attorney's fees and expenses incurred pursuant to the retainer and this Agreement.

Doc ID: 9c93bd2223bec7f0d087a8c6dc8e7f1e1f93b94f

## 15. CONCLUSION OF SERVICES; TURNOVER, STORAGE, AND DESTRUCTION OF FILES

When Attorney's services conclude, all unpaid charges shall become immediately due and payable. Attorney will normally formally withdraw from the case at its conclusion.

After payment of all sums due and upon Client's request, Attorney will deliver Client's file (other than Attorney's personal notes, briefs, and work product that Attorney elects to retain) to Client, along with any Client funds or property in Attorney's possession. If Attorney is not instructed otherwise, Client's file will be kept in Attorney's office for a limited time after completion of the case. **Files are digitized, stored as PDF files and then destroyed upon completion of a case. If you want your file, or anything out of your file, you should obtain it promptly upon conclusion of your case.**

## 16. DISCLAIMER OF GUARANTEE; TOTAL FEES AND COSTS; TAX CONSEQUENCES

Nothing in this Agreement and nothing in Attorney's statements to Client will be construed as a promise or guarantee about the outcome of Client's matter. Attorney makes **no such promises or guarantees**. Attorney's comments about the outcome of Client's matter, if any, are expressions of opinion only.

**It is understood that it is impossible to predict how long a case will take, how much it will cost, or what the resulting outcome may be.** Attorney does not make and has not made any guarantees to Client about the length or expense of Client's case. Attorney has not and will not make any guarantee as to the outcome of Client's case. Client has been informed and acknowledges that it is quite likely that the costs, expenses, and fees for legal services incurred in Client's case will substantially exceed the initial retainer fee deposit.

No advice is given regarding tax consequences, and Attorney specifically is **not** providing tax advice, although questions relating to tax matters may very well come up during the course of the case. Client agrees to seek tax advice elsewhere, and to hold Attorney harmless from any tax effects.

## 17. EFFECTIVE DATE; SEVERABILITY; FLORIDA LAW

This Agreement will take effect when Client has performed the conditions stated in paragraph one, but its effective date will be retroactive to the date Attorney first provided services, if earlier. Even if this Agreement does not take effect, Client will be obligated to pay Attorney the reasonable value of any services Attorney may have performed for Client.

The provision of this Agreement is severable. This means that if one or more provisions of

Doc ID: 9c93bd2223bec7f0d087a8c6dc8e7f1e1f93b94f

this Agreement are found to be void or unenforceable for any reason, the remaining provisions of this Agreement will still apply.

This Agreement is entered into in accordance with the law of the State of Florida, and Florida law will apply to any questions relating to the meaning of any provision of this Agreement.

**ACKNOWLEDGEMENT OF DESIRE TO EMPLOY FIRM**

I/We understand and agree to all the terms set forth in this Agreement and do hereby exclusively employ Singh Law Firm, P.A.'s services in accordance with the same, and authorize you to use my/our funds for attorney's fees and costs incurred during representation. I/We further agree and personally guarantee to pay the Firm such sums of money, including costs and disbursements, as shall be billed pursuant to the Agreement.

I/We acknowledge by signing below, that I am duly authorized by the client named above to enter into this Agreement.

CLIENT: Jumpstart Communications | ATTORNEY: SINGH LAW FIRM, P.A.

Print Name: | Jaitegh Singh, Esq.

Date: 04 / 01 / 2026 | Date: 04/01/2026

**PLEASE READ THIS CAREFULLY:**

This Agreement is a formal legal contract for Attorney's services. It protects both you and your attorney, is intended to prevent misunderstandings, and it may vary the law otherwise applicable to attorney's liens and resolution of fee disputes. **DO NOT SIGN THIS AGREEMENT UNTIL YOU HAVE READ IT THOROUGHLY AND ARE SURE YOU UNDERSTAND ITS TERMS.** If you do not understand it or if it does not contain all the agreements discussed, please call it to our attention and be sure this written Agreement contains **all** terms you believe are in effect between us. You have an absolute right to discuss this agreement with independent counsel (or any other advisor) before entering into this agreement, and we encourage you to do so.

Doc ID: 9c93bd2223bec7f0d087a8c6dc8e7f1e1f93b94f



Audit trail

| | |
|---|---|
| **Title** | SLF Attorney Engagement - Jumpstart Communications.pdf |
| **File name** | SLF%20Attorney%20...ommunications.pdf |
| **Document ID** | 9c93bd2223bec7f0d087a8c6dc8e7f1e1f93b94f |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

**This document was requested from app.clio.com**

## Document History

|  | | |
|---|---|---|
| SENT | **03 / 25 / 2026** <br> 16:41:34 UTC | Sent for signature to Erin O'Donnell (jumpstarttelecom@gmail.com) by services@clio.com acting on behalf of ea@singhfirm.com <br> IP: 98.15.99.64 |
| VIEWED | **03 / 28 / 2026** <br> 21:38:36 UTC | Viewed by Erin O'Donnell (jumpstarttelecom@gmail.com) <br> IP: 192.182.47.122 |
| SIGNED | **04 / 01 / 2026** <br> 16:44:37 UTC | Signed by Erin O'Donnell (jumpstarttelecom@gmail.com) <br> IP: 192.182.47.122 |
| COMPLETED | **04 / 01 / 2026** <br> 16:44:37 UTC | The document has been completed. |

Powered by **Dropbox** Sign

**Exhibit B – <u>PROPOSED ORDER</u>**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

In re:                                                  Case No. 26-10364

JUMPSTART
COMMUNICATIONS LLC                                      Chapter 7

            Debtor.

**ORDER GRANTING APPLICATION TO EMPLOY SINGH LAW FIRM, P.A. AS COUNSEL TO THE FORMER DEBTOR-IN-POSSESSION EFFECTIVE RETROACTIVELY AS OF THE PETITION DATE THROUGH THE CONVERSION DATE**

This matter is before the Court on the Application to Employ Singh Law Firm, P.A. as Counsel to the Debtor-in-Possession Effective Retroactively as of the Petition Date Through the Conversion Date (the "Application").

The Court, having reviewed the Application, the Verified Statement of Jaitegh Singh, the record in this case, and being otherwise duly advised, finds that the Application should be granted.

IT IS THEREFORE ORDERED that the Application is GRANTED.

IT IS FURTHER ORDERED that Singh Law Firm, P.A. is authorized to be employed as counsel to the Debtor-in-Possession pursuant to 11 U.S.C. § 327(a), effective retroactively from March 31, 2026 through April 15, 2026.

IT IS FURTHER ORDERED that this Order approves Singh Law Firm, P.A.'s employment only for services rendered during the Chapter 11 period before conversion of this case to Chapter 7.

IT IS FURTHER ORDERED that compensation and reimbursement of expenses, if any, shall be subject to further application, notice, and approval pursuant to the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules of this Court.

SO ORDERED.

Dated: _____

Judge, United States Bankruptcy Court
Northern District of Indiana